UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH GREEN,

       Plaintiff,

    v.

OCEAN BEHAVIORAL HOSPITAL OF
KENTWOOD, L.L.C. and OCEANS
HEALTHCARE L.L.C.,

       Defendants.

**COMPLAINT**

**Civ No. 17-12215**

**JURY TRIAL DEMANDED**

# PRELIMINARY STATEMENT

1.      Plaintiff Joseph Green is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. During his medical treatment at the Oceans Behavioral Hospital Kentwood, Defendants discriminated against him by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with him. As a result, Mr. Green was unable to participate in his medical treatment or understand his medical condition or the treatment he received.

2.      Due to physical, environmental, and pedagogical factors, many deaf individuals, including Plaintiff, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendants often forced Plaintiff to communicate in a medical setting using written English, an unreliable and ineffective method, instead of properly accommodating their disability through qualified ASL interpreters.

3.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute

for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said. Despite this, Defendants often forced Plaintiff to communicate using lip-reading, an unreliable and ineffective method, instead of properly accommodating Plaintiffs' disability.

4.    Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement policies and to train their employees regarding the civil rights and communication needs of deaf individuals.

5.    Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiff seeks declaratory and equitable relief, monetary damages, and attorneys' fees to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 791; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 USC § 18116; the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq.; and other state law causes of action.

## THE PARTIES

6.    Plaintiff JOSEPH GREEN (hereinafter "Mr. Green") brings this action and is an individual residing in St. Tammany Parish, Louisiana. Mr. Green is a profoundly deaf individual who primarily communicates in American Sign Language, and he is an individual with a disability within the meaning of federal and state antidiscrimination laws.

7.    Defendant OCEANS BEHAVIORAL HOSPITAL OF KENTWOOD, L.L.C. ("Oceans Behavioral Kentwood") is a Louisiana non-profit corporation doing business in Orleans Parish. Defendant Oceans Behavioral Kentwood owns, leases and/or operates Oceans Behavioral Hospital Kentwood, an inpatient psychiatric care facility for adults ages 50 years and older located at 921 Avenue G, Kentwood, Louisiana 70444. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 1557 of the ACA, Section 504 of the RA, and the Louisiana Commission on Human Rights.

8.    Defendant OCEANS HEALTHCARE, L.L.C. ("Oceans Healthcare") is a limited liability company, which is licensed and doing business in Louisiana. Defendant owns, leases and/or operates Oceans Behavioral Hospital Kentwood, an inpatient psychiatric care facility for adults ages 50 years and older located at 921 Avenue G, Kentwood, Louisiana 70444. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 1557 of the ACA, Section 504 of the RA, and the Louisiana Commission on Human Rights.

## JURISDICTION & VENUE

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

11.    Plaintiff Joseph Green (hereinafter "Plaintiff" or "Mr. Green") is married to Janet Green (hereinafter "Ms. Green").

12.    Both Plaintiff Joseph Green and Janet Green are profoundly deaf and communicate primarily in American Sign Language (ASL).

13.    Plaintiff Joseph Green and Janet Green have limited proficiency in written English, and require auxiliary aids and services to communicate effectively in a medical setting.

14.    On or about November 18, 2016 after a psychiatric episode, Joseph Green was transported by police to the Emergency Room at Slidell Memorial Hospital.

15.    Mr. Green stayed overnight in the emergency room at Slidell Memorial Hospital and was transported to Oceans Behavioral Kentwood the following day.

16.    Upon his arrival at Oceans Behavioral Kentwood, Mr. Green informed Defendant through gestures that he is deaf and repeatedly requested a sign language interpreter to help him communicate.    Defendants did not provide Mr. Green with an interpreter.    Throughout his stay, Mr. Green continuously requested a sign language interpreter, but his requests were denied.

17.    Mr. Green remained at Oceans Behavioral Kentwood until November 26, 2016.  During that time, he was provided an interpreter on only one occasion – for a family meeting on November 23, 2016.

18.    Every day during Mr. Green's stay, Ms. Green and her daughter called Oceans Behavioral Kentwood to request an interpreter on Mr. Green's behalf.  Still, an interpreter was not provided.

19.    On or about November 19, 2016, no interpreter or other auxiliary aid was provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

20.    On or about November 20, 2016, no interpreter or other auxiliary aid was provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

21.    On or about November 21, 2016, no interpreter or other auxiliary aid was

provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

22.    On or about November 22, 2016, no interpreter or other auxiliary aid was provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

23.    On or about November 23, 2016, a family meeting was held at Oceans Behavioral Kentwood. Mr. Green, Ms. Green, and their two children were in attendance along with Defendants' staff. This was the only time when Defendants provided an interpreter for Mr. Green. During this meeting with the assistance of the interpreter, Mr. Green and Ms. Green explained to Defendants' staff that Mr. Green required an interpreter to be able to effectively communicate with Defendants' staff and to meaningfully participate in his treatment. Defendants' staff did not respond. After the family meeting, Mr. Green was not provided with an interpreter.

24.    On or about November 24, 2016, no interpreter or other auxiliary aid was provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

25.    On or about November 25, 2016, no interpreter or other auxiliary aid was

provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

26.     On or about November 26, 2016, no interpreter or other auxiliary aid was provided to Mr. Green. As a result of the lack of an interpreter or other auxiliary aid, Mr. Green was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged from Oceans Behavioral Kentwood.

27.     Throughout Mr. Green's stay at Oceans Behavioral Kentwood from November 19, 2016 to November 26, 2016, there was a regular group therapy component to his treatment.  Mr. Green was not provided with an interpreter at any time for group therapy.  Mr. Green was unable to hear or understand what was occurring during group therapy and was therefore unable to benefit from the group therapy in any meaningful way.

28.     Additionally, throughout Mr. Green's stay at Oceans Behavioral Kentwood, Mr. Green was supposed to be engaging in individual therapy and meeting one on one with his doctors. Mr. Green was not provided with an interpreter for these sessions. Instead, the doctors attempted to communicate with Mr. Green by writing notes back and forth. This was not an effective means of communication for Mr. Green. Due to the lack of interpreters, Mr. Green was not able to effectively communicate with his therapist and therefore these sessions were not effective.

29.     Additionally, Mr. Green was unable to communicate any of his questions or

concerns regarding his treatment to hospital staff due to the lack of interpreters or other auxiliary aids or services.

30.    Upon information and belief, Defendants have been aware of Plaintiff's obvious disability.

31.    Defendants' staff failed to undertake any meaningful assessment of Plaintiff's communication needs and abilities.

32.    Defendants' staff never asked Plaintiff about his communication preference.

33.    Defendants' staff often forced Plaintiff to attempt to communicate through either lip-reading or writing notes in English, neither of which are effective modes of communication for Plaintiff in a serious medical setting.

34.    As a result of Defendants' failure to ensure effective communication with Plaintiff, he received services that were objectively substandard and that were inferior to those provided to patients who are hearing, and were subjected to discriminatory treatment because of their disability.

35.    Defendants intentionally discriminated against Plaintiff with deliberate indifference to his rights and to his communication needs, causing Plaintiff to endure frustration, humiliation, fear, anxiety, and emotional distress.

36.    Plaintiff would seek Defendants' healthcare services in the future, whether by choice or necessity and whether as patient or companion, due to the proximity of Defendants' medical facilities to his home and their need for medical treatment; but he is

deterred from doing so due to the discrimination he faced and expects to face in the future.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

37.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

38.    At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

39.    At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

40.    At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

41.    Defendants own, lease, and/or operate places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

42.    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43.    Title III of the ADA further provides that "[i]t shall be discriminatory to

exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

44.    Federal regulations implementing Title III of the ADA provide that a public accommodation "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

45.    Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

46.    Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

47.    As set forth above, absent injunctive relief, there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf patients or companions.

48.    Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM 2: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS

49.    Plaintiff repeats and realleges all preceding paragraphs in support of this

claim.

50.     At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., has been in full force and effect and has applied to Defendants' conduct.

51.     At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

52.     At all times relevant to this action, Defendants have owned, leased, or operated a facility which is a place which is supported directly or indirectly by government funds and thus is a place of public accommodation, resort, or amusement pursuant to LA. REV. STAT. ANN. § 51:2232(10).

53.     The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

54.     The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 2264.

55.     Defendants discriminated against Plaintiff, on the basis of disability, in

violation of LA. REV. STAT. ANN. § 51:2247.

56.   Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to LA. REV. STAT. ANN. § 51:2247.

57.   Plaintiff is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2247 and/or common law.

## CLAIM 3: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

58.   Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

59.   At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

60.   At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

61.   At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9). At all times relevant to

this action, Defendants received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, Defendants' hospital is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

62.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

63.     Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

64.     The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

65.     Defendants discriminated against Plaintiff, on the basis of disability, in violation of 29 U.S.C. § 794.

66.     As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or other deaf patients or companions.

67.     Plaintiff is therefore entitled to seek and recover compensatory damages for

the injuries and loss he sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

68.    Plaintiff is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 4: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

69.    Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

70.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the Defendants' conduct.

71.    At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

72.    At all times relevant to this action, Plaintiff had substantial limitations to the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

73.    At all times relevant to this action, Plaintiff's primary language for communication was American Sign Language and not English; and Plaintiff had limited

ability to read, write, speak, or understand English, and was an individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

74.    At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant hospital is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

75.    Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

76.    Defendants' have discriminated and continue to discriminate against Plaintiff solely on the basis of his disability and his limited English proficiency by denying him meaningful access to the services, programs, and benefits Defendants offer to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

77.    Defendants discriminated against Plaintiff by failing to ensure effective communication through the provision of qualified sign language interpreters on-site and/or through VRI machines that worked.

78.    On information and belief, the refusal to offer on-site ASL interpreter services

is as a result of a policy or practice of Defendants' to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

79.    As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiff and other Deaf patients and family members.

80.    Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

81.    Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully pray that this Court grant the following relief:

a.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the policies, procedures, and practices of Defendants have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 1557 of the Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights;

b.    Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their

companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

    c.  Issue an injunction ordering Defendants:

        i.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

       ii.  to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

     iii.  to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

     iv.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    v. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vi. to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, and the Louisiana Commission on Human Rights;

    vii. to train all their employees, staffs, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

d. Award to Plaintiff:

    i. Compensatory damages pursuant to the ADA, RA, ACA, and Louisiana Commission on Human Rights;

    ii. Reasonable costs and attorneys' fees pursuant to the ADA, the RA, the ACA, and the Louisiana Commission on Human Rights;

    iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv. Any and all other relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and

for all of the requested relief that a jury may award.

Dated: November 10, 2017

Respectfully Submitted,

John G. Veazey (LA #36291)
JOHN VEAZEY LAW, LLC
16573 Airline Highway, Suite A
Prairieville, LA 70769
225-955-3121 (tel)
jveazey@johnveazeylaw.com

***AND***

EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)

*Attorneys for Plaintiff*

By:

Andrew Rozynski, Esq.  (NY # 5054465)
*Pro hac vice*—to be filed
arozynski@eandblaw.com

Eric Baum, Esq. (NY # 2591618)
*Pro hac vice*—to be filed
ebaum@eandblaw.com

Brittany Shrader, Esq. (NY # 4768909) (TA)
*Pro hac vice* – to be filed
bshrader@eandblaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28