UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JOSEPH GREEN | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-12215 |
| OCEANS BEHAVIORAL HOSPITAL OF KENTWOOD, LLC, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court are defendants' two motions to dismiss and to stay.[1] For the following reasons, the Court denies the first motion as moot. The Court grants the second motion as to plaintiff's request for injunctive relief, but denies the motion asserted on prematurity grounds.

## I. BACKGROUND

This case arises out of claims of disability discrimination in the provision of healthcare services.[2] According to the complaint, Plaintiff Joseph Green is deaf and communicates primarily in American Sign Language (ASL).[3] On November 19, 2016, plaintiff was admitted to Oceans Behavioral Hospital of Kentwood after a psychiatric episode.[4] Plaintiff

---

[1] R. Doc. 19; R. Doc. 34.
[2] R. Doc. 22.
[3] *Id.* at 2 ¶ 1.
[4] *Id.* at 6-7.

remained at the hospital until November 26, 2016.[5] Plaintiff alleges that he requested a sign language interpreter throughout his stay at the hospital, but he was provided an interpreter on only one occasion.[6] Plaintiff further alleges that, because he lacked an interpreter or other auxiliary aid, he was unable to meaningfully engage in treatment and did not know the status of his treatment or when he would be discharged.[7]

On November 10, 2017, plaintiff filed suit against defendants Oceans Behavioral Hospital of Kentwood, LLC and Oceans Healthcare, LLC.[8] On January 22, 2018, plaintiff filed an amended complaint adding Oceans Acquisition, Inc. as a defendant.[9] Plaintiff alleges that defendants failed to accommodate his disability and failed to implement policies and train their employees on the civil rights and communication needs of deaf individuals.[10] He asserts disability discrimination claims under the Louisiana Commission on Human Rights statute, Title III of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (RA), and Section 1557 of the Patient Protection and Affordable Care Act (ACA).[11] Plaintiff requests

---

[5] *Id.* at 7 ¶ 19.
[6] *Id.* at 7 ¶¶ 18-19.
[7] *Id.* at 7 ¶ 21.
[8] R. Doc. 1.
[9] R. Doc. 22 at 5 ¶ 10.
[10] *Id.* at 3 ¶¶ 3-4.
[11] *Id.* at 3 ¶ 5.

declaratory and injunctive relief, monetary damages, and attorneys' fees.[12] Defendants now move to dismiss various claims, and for a stay of plaintiff's remaining federal claims.[13]

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter

---

[12]  *Id.*
[13]  R. Doc. 34.

3

to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### III. DISCUSSION

**A. First Motion to Dismiss and to Stay**

Defendants have filed two motions to dismiss and to stay in this matter.[14] The first motion, which is directed at the original complaint, seeks dismissal based on insufficient service of process or, alternatively, for lack of standing and prematurity, and a stay of plaintiff's remaining federal claims.[15] The second motion is directed at the amended complaint and no longer asserts insufficient service.[16] The record reflects that defendants were served with process after the filing of the first motion to dismiss, but within the 90-day period for service set out in Federal Rule of Civil Procedure 4(m).[17]

---

| | |
|---|---|
| 14 | R. Doc. 19; R. Doc. 34. |
| 15 | R. Doc. 19. |
| 16 | R. Doc. 34. |
| 17 | R. Doc. 30; R. Doc. 31; R. Doc. 32. |

Defendants do not challenge the adequacy of this service. Defendants' motion to dismiss based on insufficient service of process is therefore moot.

The alternative arguments presented in defendants' first motion are also moot. An amended complaint does not necessarily moot a pending motion to dismiss. *See* 6 Wright & Miller, *Federal Practice and Procedure* § 1476 (3d. ed. 2017). But defendants' second motion directly addresses the amended complaint and re-urges its arguments as to standing, prematurity, and a stay. Because the two motions requests the same relief,[18] the first motion is moot. *See Melson v. Vista World Inc. and Assoc.*, No. 12-135, 2012 WL 6002680, at *12 (E.D. La. 2012) (explaining that, when a new "motion is filed that specifically addresses an amended complaint, 'it surely makes sense to disregard'" the first motion (quoting Steven S. Gensler, 1 *Federal Rules of Civil Procedure*, Rules and Commentary Rule 15)). Accordingly, defendants' first motion is denied as moot.

### B. Oceans Healthcare, LLC

Defendants contend that Oceans Healthcare is not a proper party to this action because it does not own, operate or lease Oceans Behavioral Hospital.[19] This assertion directly contradicts the amended complaint,

---

[18] R. Doc. 19-1 at 13-14; R. Doc. 34-1 at 12-13.
[19] R. Doc. 34-1 at 2 n.2.

5

which alleges that Oceans Healthcare "owns, leases, and/or operates Oceans Behavioral Hospital Kentwood."[20] The complaint further alleges that Oceans Healthcare requires its hospitals to follow a uniform Code of Conduct, and that Oceans Healthcare's website lists Oceans Behavioral Hospital of Kentwood as one of its locations.[21] Defendants cite no legal authority in support of their request to dismiss Oceans Healthcare. Instead, they simply contest plaintiff's factual allegations.[22] At this stage of the proceedings, the Court must accept plaintiff's well-pleaded facts as true. *See Iqbal,* 556 U.S. at 679. Defendants' motion to dismiss Oceans Healthcare is therefore denied.

### C. Standing to Seek Injunctive Relief

Defendants argue that plaintiff lacks standing to seek injunctive relief because he has not shown an intention to seek future treatment from defendants.[23] A plaintiff must satisfy the standing requirements of Article III of the U.S. Constitution to establish the existence of an "actual case or controversy" subject to federal jurisdiction. *O'Shea v. Littleton*, 414 U.S.

---

[20] R. Doc. 22 at 4 ¶ 8.
[21] *Id.* at 5 ¶ 9.
[22] R. Doc. 34-1 at 2 n.2. The Court also notes that defendants' argument for a dismissal of Oceans Healthcare is presented only in a footnote in the "Background" section of the brief.
[23] *Id.* at 3.

488, 493-94 (1974). A motion to dismiss for lack of standing therefore challenges the court's subject matter jurisdiction, and is governed by Federal Rule of Civil Procedure 12(b)(1).

As the party invoking federal jurisdiction, plaintiff bears the burden of demonstrating each element of standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing requires that (1) the plaintiff suffered an injury-in-fact; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) it must be "likely, as opposed to merely speculative," that the plaintiff's injury will be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citation omitted). To establish standing to seek injunctive relief, a plaintiff must show a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Here, the complaint asserts that "[p]laintiff would seek Defendants' healthcare services in the future, whether by choice or necessity and whether as patient or companion, due to the proximity of Defendants' medical facilities to his home and their need for medical treatment; but he is deterred from doing so due to the discrimination he faced and expects to face in the

7

future."²⁴ Defendants present a factual attack on plaintiff's standing. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (explaining that a motion to dismiss for lack of standing is "factual rather than facial if the defendant submits affidavits, testimony, or other evidentiary materials" (internal quotation marks and citation omitted)). Defendants offer the declaration of Laura Tarantino, the sole managing member of Oceans Behavioral Hospital of Kentwood, who attests that "Oceans Behavioral Hospital has a contract with the Deaf Action Center for the provision of in-person American Sign Language interpreters upon request."²⁵

Defendants also point out that the complaint alleges that plaintiff resides in St. Tammany Parish, Louisiana, and that Oceans Behavioral Hospital is located at 921 Avenue G, Kentwood, Louisiana.²⁶ Defendants argue that the hospital is located more than a one hour drive from St. Tammany Parish, and is therefore not close to plaintiff's home.²⁷ Defendants further represent that plaintiff never sought health care services from defendants before or after November 2016.²⁸

---

24  R. Doc. 22 at 10 ¶ 38.
25  R. Doc. 34-2 at 2-3.
26  R. Doc. 34-1 at 6; *see also* R. Doc. 22 at 4 ¶¶ 6-7.
27  R. Doc. 34-1 at 6.
28  *Id.*

8

Because defendants make a factual attack on the complaint, plaintiff must submit evidence to demonstrate that he has standing to seek injunctive relief. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). But plaintiff offers no affidavits or other evidence in support of standing. Plaintiff's memorandum in opposition simply reiterates the allegation in the amended complaint that plaintiff would seek defendants' healthcare services in the future because of the proximity of the hospital to his home, but he is deterred from doing so because of the discrimination he faced.[29]

The Court finds that plaintiff's claim of future injury is too speculative to support standing to seek injunctive relief. *See Lyons*, 461 U.S. at 111. The Fifth Circuit has explained that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the alleged barrier] actually affects his activities in some concrete way." *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011). But plaintiff has not shown that returning to defendants' hospital would be a futile gesture. Plaintiff does not respond to Tarantino's representation that the hospital currently has a contract to provide sign language interpreters upon request.[30]

---

[29] R. Doc. 36 at 3-4.
[30] R. Doc. 34-2 at 3 ¶ 7.

Moreover, plaintiff fails to demonstrate that he has a concrete intent to return to defendants' facility, or that he is otherwise affected by defendants' alleged statutory violations in a concrete way. *See Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 174 (5th Cir. 2018). Plaintiff does not respond to defendants' argument that the hospital is not in fact close to his home.[31] Moreover, although the complaint alleges that plaintiff would seek defendants' healthcare services in the future because of a "need for medical treatment,"[32] plaintiff does not specify what kind of medical treatment he is likely to need from defendants in the future. A past statutory violation alone is insufficient to establish a concrete risk of future harm. *See Spokeo*, 136 S. Ct. at 1549; *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998).

Plaintiff's reliance on *Friends of the Earth, Inc. v. Laidlow Environmental Services, Inc.*, 528 U.S. 167 (2000), is unavailing. In that case, members of the plaintiff organizations provided sworn affidavits describing in detail their proximity to the subject river, their past use of the area around the river, and their specific plans to continue using the river area if not for their concerns about pollution. *Id.* at 181-83. Plaintiff fails to make

---

[31] R. Doc. 34-1 at 6.
[32] R. Doc. 22 at 10 ¶ 38.

a similarly concrete showing that he would be likely to use defendants' services in the future if not for the lack of sign language interpreters. Accordingly, plaintiff lacks standing to seek injunctive relief. Plaintiff's claims for injunctive relief are dismissed without prejudice.

### D. Prematurity

Defendants argue that plaintiff's discrimination claim under the Louisiana Commission on Human Rights statute amounts to an allegation of medical malpractice and is therefore premature.[33] The Louisiana Medical Malpractice Act (LMMA) requires that malpractice claims against health care providers be presented to a medical review panel before they can be considered by a court. *See* La. R.S. 40:1231.8(A)(1)(a), (B)(1)(a)(i). The Act defines malpractice as:

> [A]ny *unintentional tort* or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13) (emphasis added).

---

[33] R. Doc. 34-1 at 6-7.

The Louisiana Supreme Court has explained that "the limitations of the Medical Malpractice Act on the liability of qualified health care providers is special legislation in derogation of the rights of tort victims," and therefore "any ambiguities therein must be strictly construed against coverage." *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 888 So. 2d 782, 787-88 (La. 2004). "[M]andatory pre-suit review by a medical review panel" is one of the "primary limiting provisions available to private health care providers." *Spradlin v. Acadia-St. Landry Med. Foundation*, 758 So. 2d 116, 120 (La. 2000). The defendant "must show that it is entitled to a medical review panel because the allegations fall within the LMMA." *LaCoste v. Pendleton Methodist Hosp., LLC,* 966 So. 2d 519, 523-24 (La. 2007).

To determine the applicability of the LMMA, courts consider whether the "specific wrong alleged" by the plaintiff arises from medical malpractice, not whether "the Court can discern a *potential* medical malpractice claim" within the factual allegations in the complaint. *Esparza v. Univ. Med. Ctr. Mgmt Corp.*, No. 17-4803, 2017 WL 4791185, at *13-14 (E.D. La. 2017); *see also LaCoste*, 966 So. 2d at 524 (explaining that the LMMA "appl[ies] *only* to claims arising from medical malpractice"); *Williamson*, 888 So. 2d at 787 (warning that "[a]n expansive reading of the definition of medical malpractice" is inconsistent with precedent).

Here, plaintiff alleges that defendants discriminated against him on the basis of disability in violation of the Louisiana Commission on Human Rights statute.[34] This statute provides, in relevant part, that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advances, and accommodations of a place of public accommodation" on the grounds of disability. La. R.S. 51:2247. Plaintiff argues that his discrimination claim is based on intentional conduct, and thus falls outside the statutory definition of medical malpractice.[35] The LMMA defines malpractice as "any *unintentional* tort or any breach of contract." La. R.S. 40:1231.1(A)(13) (emphasis added). It is undisputed that plaintiff does not assert a breach of contract.

Defendants point to no legal authority indicating that disability discrimination can be considered an unintentional tort under Louisiana law. *See Esparza*, 2017 WL 4791185, at *14 (noting that Louisiana courts have not applied the LMMA to discrimination claims). Under the ADA and the RA, a plaintiff must show intentional discrimination to recover compensatory damages. *See Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir.

---

[34] R. Doc. 22 at 13 ¶ 57.
[35] R. Doc. 36 at 6.

2002). The Court is not aware of any cases permitting recovery under the Louisiana Commission on Human Rights statute absent a showing of intentional discrimination. *Cf. Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115, 1999 WL 1328060, at *1 (5th Cir. 1999) (finding that plaintiffs failed to show intentional discrimination in violation of La. R.S. 51:2247).

The amended complaint alleges intentional discrimination. Plaintiff asserts that he and his family members repeatedly requested a sign language interpreter, and that defendants denied or failed to respond to these requests.[36] Plaintiff further alleges that defendants were aware of his obvious disability, and intentionally discriminated against him with deliberate indifference to his rights and communication needs.[37] The Fifth Circuit has held that such conduct, if proven, can support a finding of intentional discrimination in violation of the ADA and the RA. *See Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185-86 (5th Cir. 2015) (finding a genuine dispute of material fact as to intentional discrimination when evidence indicated "that the plaintiffs made repeated requests for auxiliary aids, yet [defendant] failed on several occasions to provide effective aids and in some instances refused to provide an [ASL] interpreter after one

---

36 R. Doc. 22 at 7-8.
37 *Id.* at 10.

14

had been requested"); *Delano-Pyle*, 302 F.3d at 575-76 (finding sufficient evidence of intentional discrimination when police officer knew that deaf individual had trouble understanding his commands, but did not attempt a more effective form of communication).

There is thus no indication that plaintiff is "attempt[ing] to escape the clear dictates of the Medical Malpractice Act by masking" a medical malpractice claim as an intentional tort. *Richardson v. Advanced Cardiovascular Sys., Inc.*, 865 F. Supp. 1210, 1218 (E.D. La. 1994); *cf. Zoblotsky v. Tenet Choices, Inc.*, No. 03-2957, 2007 WL 2670110, at *2 (E.D. La. 2007) (explaining that "the gravamen of the claim seems to be that Chateau did not believe that Plaintiff would be hurt by switching the drugs, but *should* have known, which is a standard for negligent conduct, and not intentional conduct"). Similar claims of intentional discrimination based on a failure to accommodate the communication needs of deaf individuals commonly arise outside the context of medical treatment. *See, e.g., Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) (university education); *Delano-Pyle*, 302 F.3d 567 (police stop).

Accordingly, the Court finds that plaintiff's claim alleges intentional conduct rather than an unintentional tort. The Court notes that the Louisiana Supreme Court has outlined a multi-factor test to determine

whether conduct by a health care provider constitutes medical malpractice. *See Coleman v. Deno*, 813 So. 2d 303, 315-16 (La. 2002). Whether the alleged tort is intentional is one of six factors in this test. *Id.* But the Louisiana Supreme Court's decisions applying the *Coleman* test all appear to involve unintentional conduct. *See, e.g., Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 218 So. 3d 513, 527 (La. 2016); *Williamson*, 888 So. 2d at 791. Because the statutory definition of malpractice is restricted to unintentional torts, La. R.S. 40:1231.1(A)(13), the five additional *Coleman* factors are irrelevant as applied to intentional conduct. *See LaCoste,* 966 So. 2d at 529 (noting that the intentional tort "factor is not an issue in this case, as the court of appeal correctly found that the plaintiffs' allegations of intentional tort need not be submitted to a medical review panel").

Plaintiff's claim under the Louisiana Commission on Human Rights statute is thus not a medical malpractice claim. Defendants' reliance on *Bernius v. Ochsner Medical Center-North Shore, LLC*, No. 16-14730, 2016 WL 10586188 (E.D. La. 2016), is unpersuasive. The plaintiffs in that case had submitted a request for review to a medical review panel that was "nearly identical" to their complaint. *Id.* at *7. Because of the undisputed overlap between the plaintiffs' discrimination claim and their pending malpractice claim, the *Bernius* Court found the discrimination claim premature without

16

analyzing whether the plaintiffs alleged intentional conduct. *Id.*; *see also Esparza*, 2017 WL 4791185, at *15 (distinguishing *Bernius*). Here, plaintiff represents that he has not filed a malpractice claim with a medical review panel and he does not intend to file a malpractice action.[38]

Because plaintiff's discrimination claim is not a medical malpractice claim, he is not required to present it to a medical review panel. Defendants' request to stay plaintiff's federal claims is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendants' first motion to dismiss and to stay[39] as moot.

Further, the Court GRANTS IN PART defendants' second motion to dismiss and to stay.[40] Plaintiff's claims for injunctive relief are DISMISSED WITHOUT PREJUDICE for lack of standing. Defendants' motion is otherwise DENIED.

New Orleans, Louisiana, this __3rd__ day of April, 2018.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[38] R. Doc. 36 at 8.
[39] R. Doc. 19.
[40] R. Doc. 34.